First case we'll call is that of In Re National Football League Players Concussion Injury and Dislocation. Mr. Roth. Good morning, Your Honors. Good morning. My name is Michael Roth. I represent the appellant's party legal entities and their principal, Mr. Dershowitz. In these consolidated appeals, the appellant's arguments will be divided between me and Ross Losen, who represents Atlas Funding, and Peter Buckley, who represents Thrive S Specialty Funding. We'd like to ask the court's permission to collectively reserve nine minutes of time for rebuttal in these consolidated appeals. All right, that is granted, and our minutes reflect, of course, that you are arguing first, followed by Mr. Buckley, followed by Mr. Losen. Is that correct? Because you mentioned the names in a different order. If we could be permitted to switch the order, we'd like to do that as well. Certainly. Proceed. Thank you. I'll be reserving three minutes of my time allowed. There are two fundamental issues that I'd like to address today, each of which dictates that the district court's explanation and order should be reversed. The first issue is that the unprecedented referral order that extracted an issue that was pending in a motion to dismiss in the Southern District of New York and transferred that issue to be adjudicated in the Eastern District of Pennsylvania elicited an advisory opinion that was issued without federal jurisdiction. I'm trying to figure out how that, even if it is as you characterize it, and I am saying that only for purposes of argument, how that impacts your client in any way. Your Honor, it impacts my client in several ways. To the extent that this was a referral and is argued in the brief as requesting an improper advisory opinion, isn't the impact of that on the New York District litigation, not in the Eastern District? Well, it did impact my client in several ways. The first and most fundamental way is that it effectively swapped adversaries. We were in a government enforcement proceeding that was brought by the Consumer Financial Protection Bureau and the New York Attorney General against R.D. legal principles. Neither of them are participating in this appeal. Ultimately, the district court in the Southern District of New York determined that it didn't have federal jurisdiction. How can you contend that the question of interpretation of the applicable provisions here, of any provisions within the settlement agreement, were not clearly within the retained jurisdiction of Judge Brody? The retained jurisdiction of Judge Brody has three elements. The first element in the clause in the contract pertains to which parties the court retains jurisdiction over. The court retains jurisdiction over the parties, their attorneys, and people participating in the settlement. The second portion concerns the issues. It's the who and the what. This issue arguably falls within that. The third is, how do you bring these issues before Judge Brody? That is by motion. That clause also reflects the principles enunciated by the Supreme Court in the Koconen case. What the Supreme Court discusses is that the court's retained jurisdiction is a form, and at the time it was called ancillary jurisdiction, but it's now supplemental jurisdiction. What you have is a state law claim. Is that supplemental jurisdiction connected to the underlying complaint that the district court originally had federal jurisdiction over? To do that, you need parties who are actually participating in the original case. Here, the CFPB wasn't part of the original case. The New York Attorney General wasn't part of the original case. None of the already legal entities were part of the original case. Hold on now. Are you really attacking either the operation of the All Writs Act or the court's inherent authority? It seems that these orders do answer legal questions. Is your real argument? The court had no way to pull these in through the inherent authority of the court of the All Writs Act? My argument is that there may have been proper ways for these issues to make it before the district court in the Eastern District of Pennsylvania. But what happened here, there wasn't an application under the All Writs Act. There wasn't an order issued under the All Writs Act. None of those things happened. I believe there are hypothetical ways this could properly be before the Eastern District of Pennsylvania. Extracting one issue from a motion to dismiss in the Southern District of New York and adjudicating that and then sending it back to the Southern District of New York, it wasn't one of them. Let me be clear because one of the original questions from Judge Smith was how did that impact my client. What that did was take a motion that was supposed to be decided on the pleading. Be clear, what was argued in New York was that this didn't matter. Whether there was an extension of credit under the Consumer Financial Protection Act. Was Judge Kreska simply looking for some assistance from the judicial officer who knows more than anybody practically on the face of the earth about this settlement agreement to help her with respect to her management of that litigation? Well, first of all, I think the answer is no. Answer the question. I think the answer is no. He wasn't looking for that. Let me explain because I don't think Judge Kreska went out looking for help. Mr. Segar filed a request before Judge Kreska to file an amicus brief and his alternative request was that the issue be referred. This wasn't an issue that she went out looking for. Judge Kreska and Judge Brody then got on the phone and they talked with each other and they came up with this procedure. And I do agree with you that Judge Brody does know more about this settlement agreement than probably anyone out there and she's done a very commendable job in administering a very complicated settlement agreement in a complicated class action over many years. But a court's jurisdiction over a settlement agreement has limits. It doesn't extend to anything that ever touches money that the people receive. Stop right there if you would, please, because that to me is what this case is all about and how we find some limiting principles here. But that said, I'm still trying to figure out how the referral of this question really has much, if anything, to do with this litigation. What brings us here really at the start was class counsel's concern about this activity with the third party financing entities. And then eventually in September of 17, there's a motion by class counsel to withhold the disputed portions of the class member's awards, right? That is correct. And we actually didn't object to the withholding of the portion of the award that was in dispute. We considered that like an interpleader action and that it would be appropriate for the claims administrator to hold that money that pertained to RD Legal while all of this was worked out through the courts. We are currently in front of the Second Circuit also on this same issue. So when you look at the practical impact and how this affected my clients, we were opposing the motion to dismiss and we had an argument that this issue did not actually affect the substantive issue that was before Judge Presta. The question there was whether there was an extension of credit under the Consumer Financial Protection Act. And the argument we made there was that if these are true assignment agreements, which we believe they are and it's consistent with the Obermeyer decision in this case, this court issued last year, if they're sale agreements, they're not extensions of credit and they don't fall within the Consumer Financial Protection Bureau's jurisdiction at all. And if they were loans, which was the argument there, then they don't fall within the assignment clause, anti-assignment clause. So either way, what we said to Judge Presta is that this decision doesn't actually impact the motion to dismiss that we brought. And what she was looking at was a step in the process. What we ended up with, instead of having a decision on the pleadings on whether the Consumer Financial Protection Bureau and the New York Attorney General stated a claim under the Consumer Financial Protection Act, is we ended up with a decision on the merits in the Eastern District of Pennsylvania on a motion to dismiss. We have an orderly system in place for how complaints are supposed to progress through our system. We have rules of procedure that guide how that's supposed to happen. And we were on the pleadings. We were supposed to accept the pleadings. That's true. And we brought a motion to dismiss accepting the pleadings. That's true. We ended up with a decision on the merits without a complaint addressing the issues, without any discovery, and without a trial. And we believe that Judge Brody reached the wrong decision here. And the reason for that, there's some principles of New York law. You were heard, though, right? You briefed it. We did brief it, but we were briefing it on the pleadings. And what happened subsequently is that many of the attorneys who were represented, including three who were co-class counsel and signed the settlement agreement, later submitted declarations that said the settlement agreement, the anti-assignment clause, didn't say what the Eastern District of Pennsylvania said it said. They said that clause doesn't prevent funding agreements. And that wasn't before Judge Brody at the time of her decision. That all came later. But we were on the pleadings, and we ended up with a merits ruling. And there was plenty of... The issue under New York law is whether there's a clear, plain, and unambiguous contract provision that prohibits the assignment of settlement proceeds. Going back to 1882, New York law distinguishes between underlying claims of litigation and proceeds from the litigation, and allows parties to buy and sell the proceeds from litigation, even if they can't sell the underlying claim. And that's a fundamental distinction under New York law. And then you have a settlement agreement. So wait, so Judge Brody is not entitled to read it and make a call? In every one of these cases, whether this or not, she's got to have the parties weigh in about what it means if somebody comes to enforce a settlement agreement? She's got to get affidavits from both sides to... No, I don't think that is what happens in any situation. I would hope not. So for our purposes here on this court, what should be our standard of review in terms of the district court's interpretation of any provision of the settlement agreement? Well, I believe this is a contract construction issue that is reviewed de novo. And the jurisdictional issue is also... Construction and not interpretation. Yes, it's construction and not interpretation. The Eastern District of Pennsylvania expressly was just looking at the terms of the contract. I don't think that was the appropriate inquiry for the result that was reached here, that you cannot make a merits ruling on whether, not just RD Legal's seven contracts are enforceable, but thousands of funding agreements are enforceable without actually looking at those funding agreements and looking at what those say and taking evidence about what the contract provision means. Because a contract provision... New York respects the free assignability of contracts. And to prevent that assignability, under the Alfiezen case, that's the highest New York's... New York's highest court sets a very high standard. And you have to have plain, clear, and unambiguous language. The language that's in the anti-assignment provision here is almost the exact language that's in the release clause. The release clause, in exchange for your rights and benefits in the class action complaint, you give all of those up. And it actually says that, right? You get the benefits under the settlement agreement and you release your claims and rights under the class action complaint. And then that phrase is repeated in the anti-assignment clause. It says you can't assign your rights and claims under the class action complaint. And the question here really isn't whether the Eastern District of Pennsylvania had a reasonable interpretation of the anti-assignment clause. It's whether there's another interpretation that is reasonable. And if there's any ambiguity there, then the anti-assignment clause isn't enforceable. Period. And it's really a two-step process here. Because parties can prevent the assignment of settlement proceeds. And they need to do it with clear, unambiguous language in an anti-assignment clause. And then they have to satisfy the requirements of the UCC. And here, Judge Brody and class counsel made no analysis of the provision of the UCC that cross-references the tax code. And under the Schleyer case from the Supreme Court, this court's case in San Francisco, there's a very detailed inquiry that needs to happen to take advantage of a reference to the exclusion in the tax code for personal physical injuries. And when there's no allocation in a settlement agreement. And here, not only was there no allocation, the settlement agreement left the tax treatment to each player individually. And class counsel, the representatives, they weren't making any representation about the class treatment of the proceeds. With that type of representation in the settlement agreement, it's not sufficient under New York law to get out of the UCC's ban on anti-assignments clauses. I realize my outdated time is up here. I'm happy to keep going if you have further questions. We will have you back on rebuttal. And remind me, are you going to handle all the rebuttal? I was planning on only handling three minutes of the rebuttal. Thank you very much, Mr. Roloff. We'll hear from Mr. Slozen. Good morning, Your Honors. May it please the Court, my name is Rolf Slozen. I'm the attorney for the Atlas Legal Funding Entities. Atlas is requesting that the Court vacate the 2 December 8, 2017 and the February 20, 2018 orders based on four reasons, lack of jurisdiction over Atlas, the inequitableness of applying the clause to Atlas, the arbitration clause in Atlas's contract, and the severability clause. Before we get to that, let me just state that my understanding is that there is no issue between the parties as to our jurisdiction with respect to the RD entities. However, we do have some other jurisdictional issues in this case with respect to other parties. And your notice of appeal in this case was filed, I believe, on March 22, 2018. Is that right? That's correct, Your Honor. It was within 30 days of the February 20 order. All right. So given the fact that we have a December 8, 2017 order here, does your notice of appeal reach that order? It does, Your Honor, because the February 20 order is merely a continuation of the December 8 order, not just the ministerial one. What remained at issue then? Damages, Your Honor. The December 8 order determined, to some extent, liability, except that the order did not address the issue of arbitration or severability that were raised in the motion to intervene that my client filed. Counselor, So I'm puzzled by this, because your reply brief focused on articulation of damages, but the February order is even vaguer than the December order. It doesn't say a word about the damages. And now you focus on the denial of motion to intervene, which again makes sense, except you didn't appeal from the June order that actually resolved that one. I don't see how the February notice of appeal touches either of those things, either damages or the motion to intervene. Well, Your Honor, the December order failed to actually adequately explain what the damages were in terms of any of the entities. It merely said that if the parties accepted rescission, they were entitled to principal. What did principal mean? Did it mean the money that was paid to the player, the money that was paid to... Who has a better idea of what the principal would be other than your client? Well, Your Honor, the issue is what does the claims administrator believe is the principal? Now, under the court's order, rescission would mean to put the entities back to the place they were before the contract. So under Judge Brody's order, we would have the right to go after the players who don't receive a recovery because we are supposed to be placed back in a position prior to the order. Now, because there was some ambiguity whether the December 8 order actually did apply to Atlas and the other funders, it was unclear whether we could appeal or not. When the court issued the February 20 order, it still was not exactly clear whether that was final. However, what was clear was if Atlas did not act, the court would approve payment of monies that we believe would do Atlas that would go to the player in violation of our contract rights without the opportunity to be hurt. Atlas was merely a party in the motion to withhold. We weren't even part of the referral order from Judge Prescott. So we never had the opportunity to conduct discovery in any of that. It was only learned later that when the court created the new NFL case where the counsel submitted declarations regarding these contracts, they submitted a letter that Mr. Seeger issued in July of 2016 which talked about, quote-unquote, predatory lending. Again, I'm missing on February 20th. You make a respectable argument that you weren't parties except for the motion to withhold. That's not denied until June, but that's not what you're appealing. Why isn't it enough that in December, Judge Brody has the list of lenders potentially affected and adds Atlas among the list of them? December is, at least there's a reference in an appendix. There's nothing in the February one, but why doesn't the December one put you on notice? It did put us on notice. The question was whether it did actually apply to Atlas, whether we had the right to appeal. We had filed a motion to intervene which the court did not even address until, I believe, July of 2018. June in 2018. Procedurally, this whole case was all over the place and it was difficult for us to determine exactly how we should proceed. We weren't given the opportunity to address any of these issues. We would have argued, if we had been given the opportunity, that we have a severability clause that would say that if the court found that one of the clauses of the contract were improper, it would still be a valid contract and we could still enforce it. Aside from the jurisdictional issue and focusing on your severability issue, does that really get you anywhere? Are there other things? I'm not really quite sure what you're getting at. I guess what you're suggesting is, even if you cut out the anti-assignment provision, isn't it all about anti-assignment? I mean, if you prevail, is this kind of a pyrrhic victory? No, Your Honor, because under our contract, as I said, we have a severability clause. The rest of the contract is valid and we would have a lien on the player's recoveries at the interest rates that are reflected in the contract. But if the anti-assignment clauses are void, then what do you have? I apologize, Your Honor. You mean if the anti-assignment clause is applied as to Atlas's contract? Yes. Again, the severability clause cuts out that part of the contract and the contract itself says that the player agrees to pay it as a separate obligation. Oh, I see. To follow up, I think Judge Chigueras used the word void and you didn't address it. I think the nub of the issue here is, does the ruling make the whole contract void, in which case we don't get to severability, or is it just voidable, in which case there's one part false? If it's void ab initio, they have New York authority, it's not applicable. But this is not a fraud or false pretenses kind of case. So make the argument why it's not void, and therefore we can get to the severability clause. Well, again, we dispute that the clause in the settlement agreement even means what the appellees say it means. Is there any doubt as to what Judge Brody said with respect to the effect of the anti-assignment provision here, vis-a-vis your client? There's no doubt that Judge Brody did say that the settlement agreement prohibited the assignment of proceeds. Well, and in fact, let's be clear, we have more than a settlement agreement here. We have a settlement agreement that was incorporated into an order of the district court, so that not only would it be violative of the terms of the underlying contract, it would also have been violative of the court's order of adopting the settlement agreement, right? Assuming that the language was interpreted the way the district court interpreted. You say interpret, so was it a matter of interpretation, to use Justice Scalia's title, or was it a matter of construction? I apologize, Your Honor. A matter of construction. If we had had the opportunity to conduct the discovery, if we were made a party and conducted discovery that took place after these decisions were issued, we could have gotten to these arguments before the district court, and we could probably have a more complete record before this court if the district court issued a ruling after we did conduct discovery.  I know you've not had an opportunity to do that, you haven't had an opportunity yet to get to the equitable issues, but how much time have you reserved for the vote? I think two minutes. Two minutes, Your Honor. Thank you. Take it up at that time. Thank you very much. Mr. Buckley? Thank you, Your Honors. May it please the court, my name is Peter Buckley. I represent Thrive of Specialty Funding. I want to start with where we ended, and that is if there was a breach, void versus voidable, if there was a breach of the settlement agreement to which the class members and the NFL were parties, and to which my client and the others at my table were not parties, it was a breach by the class members. Before we get to that, let's again address first  Thank you, Your Honor. Why didn't you appeal the December 8 war? It was chaos. We had been... Well, the world, or at least this country, is chaos right now, but I'm not sure that that's a real clear answer as to why you didn't file a notice of appeal. Thank you, Your Honor. We were brought into the case when class counsel filed a motion to withhold, which you served on us via email. That was our first entry into the case. When were you designated an objector? We got the motion to withhold. We saw the response deadline. I wrote a letter to Judge Brody and said, you know, we'd like to oppose this motion to withhold, not the RD legal briefing, which had already begun and was in process, and she said, yes, you may file a brief, and we did, and we briefed issues like... But you really were more of a participant at this point than the other appellate parties here, weren't you? Well, RD legal had already been briefing the... No, there didn't seem to be an issue as to RD legal's appellate jurisdiction here, but you actually had objector status. You were aware of what was going on in this litigation. It was a motion to withhold. Right. And we filed a brief, and we addressed issues, none of which were covered by Judge Brody's order, and on the December 8 order, and the December 8 order just talked generally about assignment agreements. We didn't view our agreement as violative of the assignment clause. We had an arbitration clause that said that in any event, Judge Brody could not decide these issues. We had a class action MDL waiver clause that said that she couldn't decide these issues. We didn't have any of our class members with whom we had contracted complaining about anything. We didn't have a complaint. We were, you know, we were waiting on a decision on a motion to withhold, and we actually reached out to the clerk. Are you contending that it wasn't until the district court's order denying the motion to withhold as moot, really, that you knew that you ought to take an appeal? Well, we had already begun the process with arbitration. We believe that because our agreement said these issues, validity, and forcibility are to be decided by an arbitrator, that we should bring these issues to an arbitrator, and, in fact, we did. We commenced an arbitration, and when the player refused to participate, we brought a motion or a complaint to compel arbitration, and we've appealed both of those orders, the injunction against the arbitration and the order dismissing the complaint to compel arbitration, both of which provide an independent basis for this court's jurisdiction over the arguments that we raised. So just to get back, if there was a breach of the settlement agreement by the assignment of something that was not permitted by the settlement agreement, it was a breach by the player. Now, in that case, my client, there was a misrepresentation made to my client about the player's ability to assign settlement proceeds, in which case the player is in breach of our agreement. The whole result here is that I'm standing before your honors with my client, my client having paid $500,000 for an advance against settlement proceeds, and the player got both that and his award. And when I went to find redress somehow in the court, pursuant to the contract that that player signed and initialed and notarized by his attorney, I was told I can't proceed under the only dispute resolution provision in the agreement. And that's a violation of the Federal Arbitration Act, which the Supreme Court has made very clear, especially in the most recent Schein decision, that if you've got a valid agreement form and if you've got a dispute within the scope of that agreement, that's it for the district court. Every other question goes... That's it for the district court. So you are suggesting that your subsequent agreement with an individual player, which contains an arbitration provision, somehow divests the district court who has responsibility to oversee the settlement? Divest that judge of jurisdiction? No, your honor. As to that player, as to that member of the class? No, your honor. The judge has jurisdiction over that player, over the NFL... But the import of what you're arguing, as I understand it, is that somehow the FAA and its provisions are somehow superseding the district court's obligation, as she sees it, to implement and oversee the settlement agreement. Two things I want to point out. Number one, the settlement agreement reserves jurisdiction over a lot of people, but not third parties like thrivists. And I think an example will help, your honor. What if after the settlement, the settlement proceeds became the subject of another dispute? A probate dispute? A divorce dispute? A tax dispute? Would Judge Brody decide those issues as well? I'm expecting to hear from Mr. Issacharoff on that question, because it's a very important issue. But it still doesn't resolve, for me, your suggestion as to the interplay between the FAA and the district court's authority here. Well, I think that brings into account the interplay between the FAA and the All Writs Act. And the case law makes very clear that the All Writs Act is a residual source of jurisdiction. Doesn't itself create jurisdiction. Right. And moreover, where there's a specific statute that addresses the issue at hand, and this is the Pennsylvania Bureau of Corrections case, that one controls. The FAA is very clear. Is there an arbitration agreement? Here, yes. Is this dispute within it, enforceability, validity? Here, yes. That's it. Go to the arbitrator. That's very specific. The All Writs Act is a very general power. It doesn't say anything specifically about the disputed issue here. And that's a limiting principle that I think this court needs to adopt. I think the Supreme Court has articulated the limiting principles on the FAA. And 23-D is another one that I want to get to, your honors. 23-D does not allow the district court to issue substantive relief over non-parties. This is the enforcement of a settlement. The court can enforce that, and indeed it has a duty to enforce that settlement. But when that enforcement... Let me repeat. It's not only a settlement. There's an order there, too. That's right. And the order covers the parties to the case and not third parties. And that's the line. When you get to the third parties, when you start to adjudicate the rights of Thrives in absentia, the claims administrator and the special master took our agreement back into a meeting and discussed it. We didn't know that they were doing it. We didn't have an opportunity to be heard. None of this happened in open court. It all came up in these assignment rules, which hopefully your honors have seen. These are a court-created process that was created under Rule 23-D. Now, class counsel has moved away from 23-D and focused on the All Writs Act, but nonetheless 23-D must be complied with. It is an opportunity to regulate communications, but not to bring third parties into the case and to adjudicate their substantive rights. This is far away from the communications with members of the class cases that we've seen since Goldfoyle and Bernard. And that's why it's a problem. So your theme here is you're a third party. Your friend on the other side relies on John Hancock, which is a case about res judicata effect of prior federal judgments. What's your response to why John Hancock doesn't say that it's the federal courts that get to decide here and not the arbitrators, whether or not this case? So why the federal courts don't get to interpret their settlement agreement? Well, because the parties to this contract said that if there's a dispute about enforceability and validity, it goes to an arbitrator, and the Supreme Court has said we have to respect that. Moreover, because that when a court reserves jurisdiction over a settlement, it does so over the parties to whom it reserves jurisdiction. It can't bring someone new in and say, you third party, I have jurisdiction over you too. One of the things that you have to consider is that this would create, you know, MDLs, class actions are big enough already. We've got to create some boundary to them. They can't go on forever or else there's no finality here. I'm not sure I understand that. It sounds like a policy argument, but I'm not. It's not a policy argument. It's a way to find the boundaries of the court's jurisdiction. And to say that the, first of all, the funds paid by the NFL into the settlement, that's what pays for the settlement. The more things you bring in, the more issues that are brought before the settlement masters and the claims administrators and Judge Brody, the more expense it creates for the NFL. And the less money that can go to the ultimate beneficiaries of the settlement. And so Judge Brody here reached out, or class counsel reached out I should say, and brought us, filed a motion to withhold in a case that we weren't a party to, and then Judge Brody issued an order saying all of these agreements, none of which I've seen, some of which contain arbitration clauses, others contain class action waivers, they're all invalid. And the important point on the FAA is that the invalidity argument is an argument that goes to the entire contract as a whole, and Buckeye makes clear that that is an argument that must be heard by an arbitrator because it does not specifically go to the arbitration clause. All right, we'll have you back on the little thing. Thank you, Your Honor. Mr. Isakowitz. I believe we've seen you before in this case. We may have, Your Honor. Chief Judge Smith, may it please the Court, Samuel Adakroff for the class counsel, and also I'm representing Mr. White in his appeal. Most of the issues that I would have raised have been addressed by the Court, but I'll run through a few of them to see which ones you may have questions for me on. First of all, on the jurisdictional issue for the last two appellants, I believe it's absolutely clear the December 8th order voided their contracts. There can be no clearer effect of an order that says, and I quote, any agreement making such an assignment or attempt to assign is void, invalid, and of no force and effect. They have assignment contracts. They were voided as of the December 8th date. They were not parties. Well, they were not parties, but they were on notice. They were on notice. What notice? Well, the Court had issued written letters and class counsel had issued written letters to the various lenders that they were at risk of an order of this sort. They participated. Even if they're on notice, is that critical to the ultimate determination of whether or not Judge Brody, who has worked extraordinarily hard and in a very competent way in handling this difficult litigation, whether she reached too far to, as Judge Bevis has indicated, rule with respect to a non-party? That's really unusual. I don't think it is, Your Honor. I think that she is not ruling with regard to non-parties. She is ruling with regard to the disposition of the settlement proceeds, and this Court, in footnote 12 of the diet drugs opinion that we cite to in our brief, says that the Court has a form of in rem jurisdiction over the corpus of the assets of class action settlement, citing to an 11th Circuit case and most notably citing to the Baldwin United. But doesn't that in rem status disappear, at least as to the allocation of the proceeds for a specific class member, once it has been distributed? I mean, I would agree that the fund itself, prior to distribution, is a race, but that's not what we're talking about here, is it? Well, it is, Your Honor. We're talking about some distributed funds to specific members of the class. No, the funds have not been distributed yet as of the time of the contracts. These are prospective contracts. I understand the time of the contracts. And so the issue and the order on December 8th is before there has been any distribution, we take Mr. White in particular, there has been no distribution to Mr. White on December 8th, 2017, when the contract was voided. But I think Mr. Buckley has hit on what is the great concern here about the reach of the district court's order, and that is, does the district court have the authority to determine how the specific class member may use the funds that are distributed? This is the concern you raised. This is the, speaking only for myself, this is the real issue in the case. And you and I both know that that's a huge issue in terms of the authority of a district court overseeing and presiding over a class action. Interestingly to me, Judge Brody, in her December order, relied several times upon her authority as the fiduciary for the class concept. Practically every court of appeals, including us, has at least preferred to, if not adopted. Your brief interestingly adverts to that much later than in the brief that Judge Brody does in her opinion. So from which comes her authority to reach a non-party? And assuming she can do that, what's the limiting principle here? Your Honor, the way you have framed the question, quite frankly, I believe is a question of first impression. I don't know any appellate authority that defines the exact boundary. I would suggest, I suspected that, Your Honor. And I would suggest the following as the policy boundary. While the money is in the hands of the district court, pursuant to its in rem jurisdiction, the district court has plenary authority over that money or anyone who might make a claim on the assets of the settlement  Once it is out of the court's hand, I don't think the district court has authority to say to Mr. White, I don't think you should buy a boat. I think you should buy a car. I don't think you should put this money in a money market account. I think you should put it in a savings account. Let's assume there's in rem jurisdiction, which is a form of personal jurisdiction. There may be some boundaries here. Let's assume it can reach non-parties to some extent. As a matter of due process, we still have to be pretty scrupulous about notice as to the particular item being litigated, not just the motion to withhold. There are several thousand items on the docket here. You are not saying that everybody has to be up and continue to read thousands of items on the docket to find which one to appeal. It's not until June that we have the order disposing of the motion to withhold that was targeted specifically at Atlas and Thrive S2. So we have concerns about whether they're properly brought in. And then we have concerns about how they're able to litigate. This issue purports to have been decided in December 8th. Judge Brody in June treats it as moot by the time the class objectors get to their motion withhold, dismiss. In the meantime, it's been referred to a claim administrator who writes a set of rules that says, my factual determinations are unreviewable. Only what I determine are legal determinations are reviewable to no vote by the district court, which is a problem under Article 3. But Judge Brody is treating what was done back in December before there was any notice to these people specific to that order as res judicata. Res judicata is limited to parties. They weren't parties at that point. I think the concerns about whether the court can reach out at all kind of interlock with these due process adjudicative concerns about if they can do it at all. They have to be especially scrupulous about a procedure that ensures that they are parties in pleading or the functional equivalent at that point and able to challenge it. How did the district court adequately address those concerns? Well, there's many parts to that question, Judge Vegas, and let me take one part. The February 8th order, which is the only basis of the ATLAS appeal, is simply a housekeeping administrative order to the claims administrator not to allow the funds to be withheld before paying. That changes nothing in anybody's legal status. To the extent that that's the only notice of appeal that ATLAS has found, that should be dispositive on that. Set ATLAS aside. Thrive-S has an injunction directed at it, and then it has a denial of its motion, objection to the motion to withhold. That is correct, and the reason it had an injunction was that it tried to circumvent the court's order. The court's order of December 8th, which they were properly on notice of, which Thrive-S... But you're begging the question as to whether the order, in fact, was to Thrive-S or not. If it was, then they should have appealed December 8th. If it wasn't, as I'm postulating because of some of these due process and Article 3 concerns, then the injunction is the first point at which Thrive-S is, in fact, being targeted by the district court and saying, hey, we now have something that we're aggrieved by that we can appeal. In fact, back in July of 2017, I believe Judge Brody started directing orders to all the third-party lenders expressing her concern about the assignment questions, so that they... The question... Judge, I think you're asking many parts of the due process question. One is, as a practical matter, were they on notice that their rights were sub judice in December? And I think the record is absolutely clear that they were. They sought to intervene. They filed papers. All right. So you're saying that the October motion withholds is enough to put them on notice as to everything that comes thereafter. Yes, we served them. We served them with that. So I think that that's dispositive right there. Whether they knew, they then filed Thrive-S filed a motion seeking to intervene into the December 8th. They filed briefs into the proceeding on December 8th. I thought it was only RD that filed briefs on that. I will check that and correct that. If I am wrong, Your Honor, but I believe that Thrive-S also filed briefs into the December 8th hearing. And certainly Thrive-S counsel can... If I'm wrong on that, I take that back. I believe that that was the case. If that's wrong, I may be wrong on that. But then the question is, is that sufficient to put them on notice or does full process have to be made? Does something have to be done by the district court? And the district court was issuing orders in an in rem fashion. And I don't know of any authority that says that the district court supervising the proceeds under its own authority, under its own jurisdiction, under the terms of the settlement agreement, which this court approved, has to give notice to outside parties if they seek to raid that settlement. I think, again, this connects to Chief Judge Smith's effort. There's a distinction between saying, okay, this is the fraction of the whole that will go to Player White. All right? At that point, it looks classically in rem because it's against the other players who have a claim in that fund. But when we talk about once it goes past being allocated, all we have to do is cut the check to Player White. And then now the litigation's over, well, not over the claim, but over the proceeds that come after it. It starts to look, I mean, I don't know the gradations of in rem, but it looks less in rem. It looks more like a dispute between White and his assignee. Jerry, I want to contest that assessment of it because in the settlement you have Section 30.1. I think 30.1 is as clear as day. It says you can't assign these. This was not inadvertent. This was done by negotiation of the parties. We went into this wanting to protect the players from this kind of predatory loan, $380,000 on a no-risk two-year note, on a $500,000 two-year note. And the NFL has a publicly stated interest that they worry about the financial wherewithal of their players and ex-players from rookie camp on forward. So this was a negotiated point between the parties. It's right there. It's put before the district court. The district court approves it. This court approves it. And then the question is can the district court enforce that provision, which is right there on the face of the instrument, as against folks? No, but that's not really the ultimate question here, is it, Mr. Issacharoff? I mean, even if the district court properly voided those assignments, is that determinative as to whether the companies here continue to have some rights under their contracts? It is because those contracts are being voided as of December 8th. We're asking two different questions. One is a jurisdictional question. If the harm is that their contract was voided, that occurred on December 8th. If the question is does the district court have authority to void that assuming appealability and all the rest, then we're in a different domain. We're shifting to the substance of the arbitration agreement and so forth. That's a different set of questions. I'm a little bit confused, Judge Smith, by your question. Let me just say as a side matter, if Thrivist and Atlas do not have a live appeal, the arbitration issue drops out. My question, again, goes to the reach of the district court's authority to enforce the settlement agreement and its order adopting the settlement agreement. And it seems to me that it is a different question from whether or not the court has the authority, given the anti-assignment provision here, to void the assignment and go beyond that and by order divest the third-party financing entities of any and all contractual rights they may have under their respective contracts with the class actors. As a matter of the factual record, the district court tried to protect their contractual rights as much as possible under its equitable authority. It said in the first instance the settlement administrator will pay back their money. So it's not a question. So there's some equitable provision, protection there. But I don't think that answers your question, Judge Smith, because the real question that seems to be troubling the court is at what point do the powers of administration run out? And there certainly is language, and I referred earlier to the in-rate diet, drugs, footnotes, citing the Baldwin United. I do not for a second claim that this binds this court. I'm not saying that this court has clear circuit precedent on this. It's instructive that the court assumed in the diet, drugs litigation, which was longstanding, dozens of appeals before this court, always on the jurisdictional reach of the district, or oftentimes on the jurisdictional reach of the district court, this court assumed, based on Baldwin United and cases like it, that subject matter jurisdiction extended to third parties that might have an effect upon the district court's administration of a class action settlement. It assumed that. There's not a great deal of law on this. Baldwin United's language on the in-rem quality extends to third parties. That's one of the implications of it. It actually says that, but it's not part of the holding there either. And so there is not clear law on this point. Okay. So this is where it intersects. I mean, we're at the outer bounds of Article III. This is not what any 18th century disputes looked like. I understand MDLs need to deal with polycentric litigation. But we have a situation in which Judge Brody is calling for a series of contracts to be brought in without bringing in the other party to the contract. He's parsing language, he's reviewing them, without calling for an opportunity for the other side to respond, why they might be valid, why this should be in arbitration, et cetera, and then declaring. And then it's, I think Thrive says it's a month after the declaration that his contract is invalid, for the first time they learn that Judge Brody has decided to reach it and receive the notice of the concussion settlement. So these are reasons why we would be extremely cautious in treading here. Why do we have to go as far as you want us to in stretching the outer bounds of Article III? I don't think one needs to stretch the outer bounds of Article III to say that the district court's construction of the express language of the settlement agreement allows her to issue orders pursuant to that. I don't think that that goes beyond the boundaries of Article III. If it has repercussions on third parties, all arrangements have repercussions on third parties. There could be a divorce proceeding going on, there could be somebody could have died, and there may be a dispute between their heirs. Certainly, how much they're going to get in the settlement proceeding has effect on third parties. I mean, the reductio ad absurdum on the other side of this, Judge Deivas, would be to say that as soon as an NFL player dies before the award is finalized and there's a dispute among the heirs, the district court has to stop and bring in all the heirs as parties because they're affected parties. How individuals might act pursuant to what they think they are going to get is a serious matter, but we generally leave that to the contractual voluntarism of the individuals. On the other hand, when there's an express violation of a term that is negotiated between the parties that is specifically approved by the district court and then affirmed by this court, I think at that point the third party consequences do not push the boundaries of Article III. You're not making any argument here, by the way. I've not seen an argument pushed in your brief that White and the other players lacked contractual capacity to enter into this because of mental disability. That's off the table. Almost, Your Honor. It's on the table as to why the parties negotiated this. I can tell you— It's in the background. Judge Brody is talking about it, but that's not a ground to declare. Absolutely not, Your Honor. We're not going there at all. So I don't know if Judge Smith wants to follow up further in his line. If not, I was hoping you made the point about the FAA. Let's assume at least Thrivest has properly appealed. You do have to get to the FAA issue here. And why isn't this an issue for the arbitrator to interpret this contract? Well, in the most recent opinions, I think that the Supreme Court has adequately addressed this question. In Schein, Justice Kavanaugh's first opinion, he says, before referring a dispute to an arbitrator, the court determines whether a valid agreement exists. That's the task of the court. And in particular, I was taken by the language in New Prime for basically a unanimous court, where the Supreme Court says, a court must first know whether the contract itself falls within the boundaries of the FAA. The party's private agreement may be crystal clear and require arbitration of every question under the sun, but that does not necessarily mean the act authorizes the court to stay litigation and send the parties to an arbitral forum. That's Judge Gorsuch just two weeks ago in New Prime. We think that you cannot divest a federal court of the jurisdiction that it has over a longstanding dispute simply by, in a subsequent collateral matter, putting in an arbitration clause. The interpretation of the settlement agreement is squarely within the jurisdiction of the district court, or the construction of the settlement agreement is squarely within the powers of the district court, and the claim here is that something that happens afterwards divests it of jurisdiction. Your argument here is kind of isomorphic to the one you were discussing with Chief Judge Smith, that if, in fact, this is not really about non-parties, it's just about the agreement, then John Hancock's logic would apply. But I read John Hancock as saying the res judicata effect of prior federal judgments is something for the federal courts, but that's because it's the same parties. I think if we don't have a third-party problem, you're right, but the third-party problem affects the due process, affects Article III, and affects whether there's an FAA issue here. I don't read Shine and New Prime as saying everything winds up in federal court. I read it as, you know, you have to – is there a dispute the parties signed it? No. Is there a dispute about mental capacity to sign? You've said no. Those are the kind of basic threshold issues as to the arbitration clause. You're focusing on whether this is about the validity of the contract as a whole, and I don't think the court tells us to go and free-ranging interpret the contract as a whole. We're just focusing on whether the arbitration clause was validly entered into, and if so, then we go to arbitration. But I think these cases are all different from this in one critical respect. What those cases are all about, and you can go all the way down the line of the recent arbitration decisions, is the agreement between the two parties. We do not dispute that Thrive S. and Mr. White entered into a contract that has an arbitration clause. We don't dispute that. We don't dispute the contract was formed. We dispute whether the contract could be formed using an assignment from the class action settlement. And Judge Krauss, in an order of this court denying expedited appeal, cites to the Second Circuit decision in city grouping, which in turn cites to this court's opinion in John Hancock, for the proposition that courts have the power to frustrate an arbitration demand if it seeks to divest them of jurisdiction. That courts have the obvious power to protect their own jurisdiction once it's previously enacted. And I agree, Judge Bibas, that John Hancock, on its terms, turns on the race judicata effect of a prior decision, and you have the same parties in there. But John Hancock is talking about the jurisdictional authority under the All Writs Act of a court to protect its judgment. Here, it's more than just protecting its judgment. It's protecting not just its judgment, but its jurisdiction, because there is ongoing jurisdiction under the settlement agreement. So we've hit both sides of the All Writs Act. This is a much stronger case than John Hancock for the application of All Writs Act power here. And that's, I think, why Judge Krauss refers to the Second Circuit opinion and not just to John Hancock, because of the fact that there was ongoing jurisdiction here, as there was in the Citigroup case in the Second Circuit. Just to go back for a minute, let's talk about our jurisdiction over the appeal of the arbitration orders by Thrive S. I mean, the December order doesn't mention the arbitration orders. Why isn't that – why don't we have appellate jurisdiction over that? Your Honor, that issue wasn't briefed. It wasn't raised. I mean, I don't – frankly, I think you probably do. I think you probably do, but it's kind of a laid-down case if they want to appeal that order, because at that point you have the December 8th order, which says they have no contract. And so this is just a housekeeping injunctive order that says, well, fine, you know. You can call an arbitration, but you can't proceed with it because I've already voided the contract. And so you can't hold one of my class members under the authority of the arbitration. And in the list of contracts she was voiding, Atlas, I think, is mentioned, but Thrive S isn't. I am not certain about that, Your Honor. I heard Your Honor refer to the list, because the December 8th order, which we think is critical, doesn't specify individual parties. It just says any agreement making such an assignment or attempt to assign. So that is broader than any list of individual parties. Let me just make two other points, if I may, with my remaining time. First of all, on the referral point, there's an argument made that this is beyond the powers of an MDL. By the time we're at the settlement implementation point, we're no longer an MDL. This is a class action settlement. It was approved as such. So the MDL issue is make way. It has no bearing. The second is on the UCC point, Article 9, and the claim by RD Legal that it's really hard to tell whether this is commercial pay for a personal injury. Let's be clear. The class was defined as those who have injury already and those who have injury prospectively. This court affirmed the settlement, including over challenges on CTE and other illnesses, including mental disorders, emotional distress, which were not compensated. And the issue before this court was whether it was fair or reasonable or whether Judge Brody was correct in determining that it was fair or reasonable and adequate to compensate only a certain list of injuries, neurocognitive injuries. And Judge Smith, in your first opinion in the preliminary appeal in this case, you described the class exactly that way, as those with neurocognitive injuries. And so under that circumstance, the provision of 408D1 of the UCC in New York is clear. Anti-assignment provision does not apply to claim or right to receive compensation for injuries. Nobody is getting a penny here for waiving declaratory judgment rights. Nobody gets a penny for waiving injunctive rights. You don't get compensated for that. The only compensation here comes from a scheduled list of specific injuries, and that's what they got paid for, and that's why these lenders are all here, because these are injured individuals. So the UCC argument drops out of its own accord. As a practical matter, maybe I misconstrued it, but one of your friends on the other side said, basically, if we don't have arbitration, how are we supposed to get repaid? You said the claims administrator is going to make good. So that's their remedy, right? Yes. Yes, the district court is aware of this problem. And frankly, this is uncharted territory. We don't have a lot of blueprint on exactly how to handle these kinds of situations. The contract is void, and so once you have a voided contract, I think the equitable powers of the district court kick in, and the district court said, you're there. Let me ask you what I asked Atlas, which is the district court calls it void, but normally, absent fraud in inducing the contract or something like that, it would be voidable. And therefore, the separability would apply. What's your response to that? The reason that it's void, not voidable, is that voidable is usually used when there's a public policy overlay on the contract of the parties that makes one of the parties able to terminate it. This is the district court acting on its own authority. It seems like it's a public policy objection from the district court. It's not coming from the legislature. No, it's coming from the text of the settlement agreement, which is a court order and which was affirmed by this court. So it's not a public policy matter. You could have plenty of class action settlements that allow assignment, that allow anything you want in them, including arbitration agreements for disputes. And many settlements have internal dispute resolution qualities to them. But this is not a matter of generalized public policy. This is straight out of the language of 30.1 of the settlement agreement, which is, as Judge Smith said, incorporated into a court order at this point. So it's not an abstract question of public policy. Thank you very much. Rebuttal, I guess, first, Mr. Ross. Thank you, Your Honor. So I just like to pick up on one issue that the MDL statute has no play right right here. When the referral order was entered by Judge Prescott, the authority she relied on was the MDL statute. And the MDL statute, as counsel just said, doesn't apply here. There's no authority that allows a district court to take an issue pending a motion to dismiss and transfer it to another district court. I mean, fundamentally, I think this is about the scope of authority and how that authority is exercised. District courts are courts of limited jurisdiction. The authority they exercise has to be authorized by the Constitution or statute. It's outside the inherent authority of the court to act this way? I think, yes, it's outside the inherent authority of the court to reach into another district court and pull out an issue that is pending a motion to dismiss and adjudicate that single issue. And then even go beyond that and not just answer the question that was referred, but go on to invalidate thousands of contracts without a complaint. And without going through the process that our system has set up for many, many years. And that works. And it's a problem here because we actually have people who sign the agreement saying it doesn't mean what Judge Brody says it means. And when counsel says it's on the face of Section 30.1 that it invalidates all assignments, the clause doesn't do that. It invalidates rights and claims relating to the subject matter of the class action complaint. And that's exactly what is also released in the settlement agreement. That is not plain and unambiguous language. As to the UCC issue that was also discussed briefly, like Eastern District of Pennsylvania, counsel just left out that the UCC cross-references the tax code. You have to go to the tax code. It doesn't just say personal injury damages are exempt from UCC's prohibition on anti-assignment clause. It says personal injury are exempt as described in the tax code. And the tax code is very specific. It exempts the type of damages, not the type of injuries. Punitive damages, which were in the underlying MDL complaint, are a taxable income. You cannot bar an assignment of punitive damages under New York law. If any player may have taken a medical deduction, we have over 20,000 players here, if any of them took a medical deduction, then you can't bar that assignment of income that is attributable to that medical deduction. In the underlying complaints, there's interest. In Francisco, this court said, even when you have a personal injury claim, you have to parse out each element of damages that goes into that. And interest isn't excludable from income. And once it's not excludable from income, you can't bar the assignment of it. The UCC says that. The cases in counsel's briefs talk to the prior version of the UCC. The revised Article 9 very clearly reaches proceeds from settlement agreements. It draws a distinction, the same distinction that New York law does, that there's a difference between the underlying tort claims and the proceeds from those claims. All right, thank you very much. Just quickly before addressing the equitable issue, regarding the timing, ATLAS had filed a motion to intervene, and in those papers raised the issue about arbitration, including contracts, which included the severability. The court never addressed that until after we had already filed the appeal. So I think that's the reason why the February 20 order is relevant as the timeframe from which we should have determined to file an appeal. Regarding the issue of estoppel, the equitable argument, as we referenced in our papers, Mr. Seeger had sent the letter around to various class members and attorneys from July of 2016, in which he references predatory lenders charging 3% interest. He told the players that they shouldn't enter into them if they could avoid doing it. He never said that they are not permitted. He never said that the order and settlement agreement said it was a prohibited transaction. But doesn't judicial estoppel apply when there's a real inconsistency? I mean, he may not have gone as far as perhaps he should have, but he didn't change course directly, right? Well, actually he did. If you look at some of the declarations that were submitted after the February 20 order, the attorneys had said that Mr. Seeger had referred some of the attorneys to go to Esquire Bank to do transactions. Esquire Bank's contracts had assignment language. So he clearly permitted those contracts to proceed. He had an opportunity in February of 2017 when he filed the injunction against Mr. Willis, who he claimed was working with litigation funding companies and other entities. He prevented them from contacting players. In that motion, he never said these transactions are prohibited because of the anti-assignment clause.  There were many opportunities for the appellees to take the opportunity to prevent these transactions from taking place, but they never did. It only occurred as a result of the transfer from Judge Prescott in the Southern District.  So there is, in our opinion, a change of position to the deference of my client. Thank you, Your Honors. Where does the district court's jurisdiction end? It ends when the settlement proceeds are paid to the player. That's a construction that is consistent with the settlement agreement. We go through it in our brief, but essentially when you settle the case, you give up your rights under the class action complaint, if you don't opt out, for the rights in the settlement agreement. When you make a claim and that claim goes through the process and it gets paid, you give up your rights under the settlement agreement for that payment. If you look at Thrive S Agreement, Section 2C makes very clear, we don't have a right to get paid, and indeed that non-recourse nature is what makes it the type of agreement that's not subject to usury, it's not a loan, et cetera. We don't have a right to be paid until they get paid. And so we're waiting outside the courthouse, outside the claims administration process, for that to happen. Counsel suggests that we wanted to get involved in the claims administration process. No, we didn't. We waited. We filed an arbitration outside of that process to enforce our rights. I agree with what he said. The court has authority over the money while it's in the court's possession. But when that money is paid, outside of that court, that player has the freedom of contract to make decisions as he or she sees fit for themselves. And the court should not interfere with that individual's freedom of contract, which is the very freedom of contract that is fundamental to the UCC and to the anti-assignment provisions that were discussed by my friend. Could I ask you to respond to your friend on the other side on the arbitration issues? He conceded that there was an arbitration agreement formed. We've got initials on that page. So as a result, and he's conceded that his argument is that the entire agreement is invalid because of the operation of this contract that the party who is trying to keep the money signed and we didn't sign. So it's clearly within Buckeye. I also want to address the issue of the merits of this dispute. We use the moniker assignment, anti-assignment. It doesn't say what they say it says. It says you can't assign rights or claims related to the class action complaint. Those are gone when you don't opt out of the settlement agreement. You get one step over. You get claims under the settlement agreement. We're not even asking for an assignment of rights under the settlement agreement. We're asking for an assignment of the proceeds of those rights. That's two steps over. There's a conflict in the interpretation principles relating to. That language relating to was given broad construction by Judge Brody. You just used the term interpretation and the term construction. I'm wondering, are we into interpretation or are we into construction? You know what, Your Honor, I apologize. Since we have different standards of review. I think under either one, Your Honors can address the issue. But the issue is relating to in the context of an anti-assignment provision under the UCC, it has to have a narrow construction. The court cites cases involving broad construction of relating to in the context of arbitration. It's a conflict of those two things. It's important that Your Honors address this issue because class actions settle all the time. And they put these provisions in there. And people need guidance about whether these provisions are going to be construed narrowly or broadly. Class counsel who had participated in these cases knew how to draft the provision. You can't assign settlement proceeds, period, full stop. We wouldn't be here. All right. Thank you, Your Honor. Thank you very much, Mr. Buckley. Thank you to all of counsel. The NFL concession litigation goes on. Something of a saga at this point. But it is important to bear in mind, as we know that Judge Brody did expressly in her December 8th opinion, in which she expressed concern for the individual players, retired players, who comprise the class in this action. We'll be taking the matter under advisement and ask that a transcript of these proceedings be prepared. We thank counsel for their very able briefing and argument here today. Thank you very much. We'll take a brief recess.